*610 OPINION.
Phillips:
The petitioner claims to have been affiliated with the Ford Realty & Construction Co. during the years 1923 to 1925, inclusive, and entitled to have its tax computed upon the basis of a consolidated return of its income with that of the Ford Co. It appears that during the year 1923 the four persons who owned the stock of the petitioner also owned 76 per cent of the stock of the Ford Co. The remaining 24 per cent was owned by J. B,. Kraus and L. A. Kraus, The claim for affiliation in 1923 is based upon *611 the contention that this minority stock was controlled by the four individuals owning the stock of the petitioner. Section 240 (c), Eevenue Act of 1921. The evidence fails to show any such control. On the contrary, it indicates that J. E. Kraus played a very important part in the affairs of the Ford Co.
The Eevenue Act of 1924, section 240, omits all reference to control of stock for the purpose of determining affiliation and bases affiliation upon ownership of 95 per cent by the same interests. The petitioner contends that prior to 1924 J. E. Kraus had surrendered his stock in the Ford Co. and that during subsequent years the stock of that company was owned by the same individuals who owned the stock of petitioner. The oral testimony offered to support the view that there was a surrender of the stock is very indefinite and uncertain and is flatly opposed to the written records of the Ford Co. These records show that J. E. Kraus continued as a director and officer of the corporation until 1926 and attended and took an active part in the meetings of the directors. They also show that until 1926 he signed waivers and certificates as a stockholder of the company. It also appears that the formal affairs of the corporation were largely attended to by his nephew, L. A. Kraus, a lawyer, who, it is testified, was careful in handling details. In his testimony, given in 1930, J. E. Kraus is very indefinite in his recollection of the date when he terminated his connection with the company. Considering the testimony as a whole, it seems quite probable that there was no surrender of his stock by Kraus before 1926 and certainly the testimony is insufficient to justify an affirmative conclusion to the contrary. The claim for affiliation is denied.
The second question concerns the value at which certain land contracts are to be included in the computation of gross income. Some of the testimony would indicate that these contracts had no fair market value when received. An analysis of the evidence submitted, however, shows that during the years 1923 to 1925, inclusive, the petitioner made sales of some $331,000 upon which it collected $197,000 in cash, leaving an unpaid balance of $133,000 due upon such contracts at the close of 1925. Of the amount due, only $19,500 was delinquent for more than six months. Apparently there had been but few cancellations. These figures indicate a very small percentage of defaults and tend to establish financial responsibility on the part of those to whom the property was sold. They lend some support to the action of the Commissioner in valuing the contracts at their face amount. There is much testimony from qualified witnesses that these contracts could have been sold or used as collateral only at a substantial discount; a situation which we recognize as general in the case of junior liens on unimproved, *612 or even improved, realty; Considering tlie whole record, we reach the conclusion that these contracts had a fair market value of 65 per cent of their face. Although the sale of such contracts presents difficulties, the evidence indicates that such discounted value was readily realizable by the use of the contracts as collateral.

Decision will be entered under Bule 50.